1  Howard J. Rubinroit (SBN 49721)
   Bradley H. Ellis (SBN 110467)
2  Ronald C. Cohen (SBN 130100)
   Bradley J. Dugan (SBN 271870)
3  Logan P. Brown (SBN 308081)
   *hrubinroit@sidley.com; bellis@sidley.com;*
4  *rcohen@sidley.com; bdugan@sidley.com;*
   *lbrown@sidley.com*
5  **Sidley Austin LLP**
   555 W. Fifth Street, Suite 4000
6  Los Angeles, CA 90013
   Tel: (213) 896-6000
7  Fax: (213) 896-6600

8  Attorneys for Plaintiffs
   DORIS DAVIS and MARION GRANT
9

10                    UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12                        SAN JOSE DIVISION

13

14  DORIS DAVIS, an individual, MARION    )  Case No. 16-cv-6258
    GRANT, an individual, and on behalf of )
15  themselves and all others similarly situated, )
                                          )
16              Plaintiffs,               )  CLASS ACTION COMPLAINT FOR
                                          )  INJUNCTIVE AND MONETARY RELIEF
17         vs.                            )
                                          )  **DEMAND FOR JURY TRIAL**
18  UNITED STATES OF AMERICA, U.S.        )
    DEPARTMENT OF VETERANS AFFAIRS,       )
19  U.S. DEPARTMENT OF DEFENSE,           )
    DEFENSE FINANCE AND ACCOUNTING        )
20  SERVICE, ROBERT A. MCDONALD,          )
    Secretary of Veterans Administration, )
21  ASHTON B. CARTER, Secretary of Defense, )
    TERESA A. MCKAY, Director of Defense  )
22  Finance and Accounting Service and DOES 1- )
    100, inclusive,                       )
23                                        )
                Defendants.               )
24  _____ )

25

26

27

28

## CLASS ACTION COMPLAINT FOR INJUNCTIVE AND MONETARY RELIEF

### NATURE OF THE ACTION

1.     More than 45 years after being exposed to Agent Orange while serving in the United States Armed Forces in Vietnam, many veterans and their families are still waiting for compensation, including retroactive military retirement pay, due to them because of the devastating effects of the toxic stew of chemicals on the veterans.  This action for injunctive and monetary relief seeks to end the unreasonable delay of the federal government defendants in (a) determining whether members of a previously certified class of Vietnam War veterans and their surviving family members are entitled to retroactive payments of military retired pay ("Military Retired Pay") pursuant to 10 U.S.C. § 1414 ("Section 1414") as a consequence of the U.S. military departments' use of Agent Orange in Vietnam during the Vietnam War and (b) making payments of retroactive Military Retired Pay to those class members to whom such payments are owed.

2.     This action is the latest chapter in the federal government's unfortunate history of failing to act to provide this class of veterans and their survivors (the "Veterans Class," as defined *infra*) with the benefits to which they have long been legally entitled.  It concerns the intersection of:

i.     the final class action order entered in 1991 by the U.S. District Court for the Northern District of California requiring the U.S. Department of Veterans Affairs ("VA") to readjudicate disability claims previously filed by class members for diseases that were later found to be associated with Agent Orange exposure (the "1991 Order");

ii.     the addition in 2010 of new diseases determined by the VA to be presumptively associated with Agent Orange exposure, which triggered the VA's obligation under the 1991 Order to readjudicate the class members' previously filed disability claims concerning those new diseases; and

iii.     the retroactive application of Section 1414 requiring the Defendants to make retroactive payments of Military Retired Pay to the Veterans Class due to these readjudications.

3.     More specifically, in 1987, a class of Vietnam War veterans and their survivors was certified in *Beverly Nehmer, et al. v. Department of Veterans Affairs*, 118 F.R.D. 113 (N.D. Cal. 1987).  Pursuant to court orders issued in that case, the VA is required to readjudicate a *Nehmer* class member's previously filed disability claim whenever the Secretary of the VA determines under the Agent Orange Act of 1991 that a new disease is presumptively associated with Agent Orange exposure.  In 2010, the VA added three new diseases.  38 C.F.R § 3.309(e).  Beginning in late 2010, the VA readjudicated the disability claims of more than 100,000 *Nehmer* class members whose claims concerning one or more of those three diseases were previously denied.  Tens of thousands of those class members received a retroactive increase in their combined VA disability rating as a result of this process and, as a result, became entitled to retroactive payment of disability compensation from the VA ("VA Disability Compensation").

4.     A large number of *Nehmer* class members are military retirees of the U.S. Armed Forces who became entitled to Military Retired Pay upon separation from active duty service. Beginning in late 2010, thousands of these military retirees received a retroactive increase in their combined VA disability rating as a result of a *Nehmer* readjudication decision.  The VA decision to increase retroactively the combined VA disability rating of a military retiree triggered the duty of defendant Defense Finance and Accounting Service ("DFAS") to determine whether the military retiree was entitled to receive retroactive Military Retired Pay from DFAS based on the retroactive increase in the retiree's combined VA disability rating.

5.     Specifically, DFAS is charged with paying Military Retired Pay to veterans who are military retirees with at least 20 years or more of creditable service in active or reserve duty.  Prior to January 1, 2004, a military retiree was prohibited by 38 U.S.C. § 5304 from receiving both the full amount of VA Disability Compensation and the full amount of Military Retired Pay to which the retiree would otherwise be entitled.  By law prior to January 1, 2004, the aggregate amount of VA Disability Compensation and Military Retired Pay paid to the veteran/retiree could not exceed whatever was the higher of the two entitlements (i.e., VA Disability Compensation or Military Retired Pay).  For example, prior to January 1, 2004, a military retiree entitled to $500 per month in VA Disability Compensation and $1,500 per month in Military Retired Pay could not legally

receive from VA and DFAS an aggregate amount in excess of $1,500 per month.  The veteran/retiree would have the right to choose what part of the $1,500 per month should be paid as VA Disability Compensation and what part of the $1,500 per month should be paid as Military Retired Pay.  Because VA Disability Compensation is tax-free, the veteran/retiree in this example would generally choose to "waive" $500 per month in Military Retired Pay so that the VA would pay the veteran/retiree $500 per month in VA Disability Compensation and DFAS would pay the veteran/retiree $1,000 per month in Military Retired Pay.

6.     Effective in 2004, with some exceptions, Congress eliminated that prohibition, resulting in thousands of veteran/retirees being entitled to receive on a prospective basis the Military Retired Pay they had previously been waiving.  Specifically, Congress enacted the National Defense Authorization Act of 2004 which entitled eligible military retirees, with some exceptions, to receive both their full VA Disability Compensation and their full Military Retired Pay.  That legislation was codified as 10 U.S.C. § 1414, and became effective January 1, 2004.  The amount of Military Retired Pay any particular veteran/retiree would be entitled to receive because of this change in the law depends in part on the veteran/retiree's combined VA disability rating and the calendar year for the specific month of entitlement.  Thus, when the VA added new diseases in 2010 which resulted thereafter in a retroactive increase in the combined VA disability rating of *Nehmer* class members who were military retirees, some of those class members also became entitled to receive from DFAS retroactive payments of Military Retired Pay that they previously had waived in order to receive their full, tax-free VA Disability Compensation.

7.     Although the VA readjudicated the cases of, and granted a retroactive increase in the combined VA disability rating to, military retiree class members beginning in late 2010, DFAS has yet to fulfill its longstanding obligation to pay the retroactive Military Retired Pay to which Plaintiffs herein and the Veterans Class are entitled.  Pursuant to the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, Plaintiffs and the Veterans Class seek an injunction to compel DFAS to comply with its mandatory obligation to determine the amount of retroactive Military Retired Pay that each Plaintiff and member of the Veterans Class is entitled to receive.  Plaintiffs and the Veterans Payment Subclass (as defined *infra*) seek, pursuant to 10 U.S.C. § 1414 and 28 U.S.C. §

1346(a), payment of the retroactive Military Retired Pay to which they are entitled as a result of Section 1414 and the *Nehmer* readjudication decision in their case.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over Count I for injunctive relief pursuant to 28 U.S.C. § 1331 and pursuant to the Administrative Procedures Act, 5 U.S.C. § 701 *et seq.*, which entitles "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action. . . to judicial review thereof."  5 U.S.C. § 702.  Venue is proper pursuant to 28 U.S.C. § 1391(e).

9.      This Court has jurisdiction over Count II for monetary relief pursuant to the Tucker Act, 28 U.S.C. § 1346(a), in that it is a civil action or claim against the United States, not exceeding $10,000[1] in amount for each Plaintiff and each member of the Veterans Payment Subclass.  The statutory basis for invoking jurisdiction under the Tucker Act is 10 U.S.C. § 1414 and 38 U.S.C. § 5304.  Venue is proper in this Court because the named Plaintiffs reside in this District as provided in 28 U.S.C. § 1402(a)(1).  This action is timely brought within the applicable limitations period.

## INTRADISTRICT ASSIGNMENT

10.     Pursuant to Civil Local Rule 3-2, this action is assigned to the San Jose Division because each named Plaintiff is a resident of Monterey County, California.

## PLAINTIFFS

11.     Doris Davis is the surviving spouse of *Nehmer* class member and military retiree Calvin Coolidge Davis, who suffered from coronary artery disease and passed away on November 18, 2007.  Mrs. Davis is a resident of Marina, California.

12.     Marion Y. Grant is the daughter of *Nehmer* class member and military retiree Junior Grant, who suffered from ischemic heart disease and passed away on May 17, 2008.  Mrs. Grant is a resident of Monterey, California.

---

[1] Plaintiffs also give notice that, prior to the filing of this Class Action Complaint for Injunctive and Monetary Relief, a separate class action complaint for monetary relief was filed by other members of the *Nehmer* class in the Court of Federal Claims.  That separate action in the Court of Federal Claims seeks monetary relief under 28 U.S.C. § 1491(a)(1) of the Tucker Act for claims against these same defendants of more than $10,000 for each plaintiff and class member therein, based on the same conduct as alleged herein.

**DEFENDANTS**

13.     The United States of America is acting by and through the Department of Defense, the Defense Finance and Accounting Service, and the Department of Veterans Affairs, each of which is an agency of the United States government.

14.     The Defense Finance and Accounting Service is an agency of the United States Department of Defense.

15.     The U.S. Department of Veterans Affairs is an agency of the United States government.

16.     The Department of Defense is an agency of the United States government.

17.     Teresa A. McKay is an individual named solely in her official capacity as the Director of DFAS.

18.     Robert A. McDonald is an individual named solely in his official capacity as the Secretary of Veterans Affairs.

19.     Ashton B. Carter is an individual named solely in his official capacity as the Secretary of Defense.

**BACKGROUND**

**Legal Standards Governing a Veteran's Dual Receipt of Both**

**VA Disability Compensation and Military Retired Pay**

20.     Military retirees who incurred disabilities as a result of their military service may be entitled to receive both Military Retired Pay, paid by DFAS, and VA Disability Compensation, paid by the VA.

21.     The amount of VA Disability Compensation to which a veteran is entitled is based on the veteran's combined disability rating, which is a determination made by the VA concerning the severity of the veteran's service-connected disability (or disabilities).  Disability ratings are made in increments of 10 percent, so a veteran's combined disability rating can be 0 percent, 10 percent, 20 percent, 30 percent, 40 percent, 50 percent, 60 percent, 70 percent, 80 percent, 90 percent, or 100 percent.  The amount of Military Retired Pay a veteran/military retiree is entitled to receive is calculated by DFAS based on a formula which considers the military retiree's former

salary and his years of service.

22.     Prior to 2004, federal statutes and regulations did not permit veterans who were entitled to both Military Retired Pay and VA Disability Compensation to receive full payments of both benefits at the same time.  *See* 38 U.S.C.S. § 5304 & 5305; 38 C.F.R. § 3.750.  Rather, veterans who were otherwise entitled to both benefits had to waive some or all of their Military Retired Pay in order to receive all of the tax-free VA Disability Compensation to which they were entitled.

23.     Because VA Disability Compensation is tax-free, veterans often elected VA Disability Compensation over Military Retired Pay.  That is, they waived a dollar of their Military Retired Pay for each dollar of VA Disability Compensation they received.   Thus, the election that most veterans made resulted in the amount of Military Retired Pay to which the veteran/retiree was entitled to receive being reduced by the amount of their VA Disability Compensation.

24.     When Section 1414 became effective in 2004, it allowed for concurrent receipt of both Military Retired Pay and VA Disability Compensation for certain eligible military retirees. *See* 10 U.S.C. § 1414.  The Department of Defense is responsible for administering the program, which it delegates to DFAS.  In effect, Section 1414 "restored" to eligible veterans the right to receive some or all of the Military Retired Pay that they previously had waived in order to receive their VA Disability Compensation.  This restoration of Military Retired Pay is known as Concurrent Retirement and Disability Pay ("CRDP").  With the enactment of Section 1414, veterans with at least a 50 percent combined VA disability rating and at least 20 years of qualifying military service were scheduled for the first time to receive – at some future date – both their full Military Retired Pay and their VA Disability Compensation.  *See* 10 U.S.C. § 1414.

25.     Upon enactment of Section 1414, veterans did not immediately become entitled to receive 100 percent of their Military Retired Pay.  Rather, Section 1414 has "phase-in" periods during which a portion of the veteran's Military Retired Pay is to be "restored" each calendar year until the applicable phase-in period has been completed.  *See* 10 U.S.C. § 1414(c).  Section 1414 explains in detail how to determine the amount of Military Retired Pay under CRDP that is available to veterans pursuant to this phase-in schedule.

26.     Section 1414 has two phase-in periods: one for veterans with a combined VA disability rating of 50-90 percent, and another for veterans with a combined VA disability rating of 100 percent.  For veterans with a combined VA disability rating of 50-90 percent, Section 1414 provides for a 10-year phase-in period, such that the percentage amount of Military Retired Pay restored to the veteran was to increase each calendar year until 2014, when the phase-in period would be completed.  From January 1, 2014 onward, the veteran would then be entitled to receive his or her full Military Retired Pay.

27.     For veterans with a disability rating of 100 percent, Section 1414 provides for a one-year phase-in period, such that the veteran would be entitled to receive his or her full Military Retired Pay beginning on January 1, 2005.

28.     The applicable government guidelines state that "CRDP will be recomputed for any month of the phase-in period in which changes to . . . VA disability compensation occur."  *See* Financial Management Regulation Volume 7B:  "Military Pay Policy and Procedures – Retired Pay," *available at* http://comptroller.defense.gov/Portals/45/documents/fmr/Volume_07b.pdf., at p. 64-4.

29.     As DFAS provides on its website, "[n]o application is required" for a veteran to receive CRDP, and "[e]ligible retirees receive CRDP automatically."  *See* http://www.dfas.mil/retiredmilitary/disability/payment.html.  Unfortunately, in practice, DFAS did not automatically make these determinations and payments and, instead, failed in many cases to make any determination or payment whatsoever.

### VA and DFAS Procedures To Provide Both VA Disability Compensation and Military Retired Pay to Eligible Veteran Retirees

30.     While the VA and DFAS are separate agencies, each responsible for providing its own benefits to eligible veterans, both agencies represent that they work together to ensure that eligible retired veterans receive the CRDP to which they are entitled under Section 1414.

31.     On its website, under the heading "Retroactive Payments," DFAS states:

DFAS and the Department of Veterans Affairs (VA) manage the CRDP/CRSC Processing program (formerly known as VA Retro) to pay eligible military retirees any retroactive CRSC, CRDP and/or VA disability compensation they are owed. . .

A retiree may be due funds from DFAS, the VA or from both agencies. DFAS and the VA remain in communication with each other to successfully establish and process CRDP and CRSC accounts.

DFAS will audit your account to determine whether or not you are due retroactive payment. An audit of your account requires researching pay information from both DFAS and VA. If you are due any money from DFAS, you will receive it within 30-60 days of receipt of your first CRSC or CRDP monthly payment.

If DFAS finds that you are also due a retroactive payment from the VA, we will forward an audit to the VA. They are responsible for paying any money they may owe you.

*See http://www.dfas.mil/retiredmilitary/disability/payment.html.*

32.     VA states the following on its website:

Additional Benefits for Eligible Military Retirees Concurrent Retirement and Disability Pay (CRDP) is a DoD program that allows some individuals to receive both military retired pay and VA disability compensation. Normally, such concurrent receipt is prohibited. [] Veterans do not need to apply for this benefit, as payment is coordinated between VA and the military pay center.

*See http://www.va.gov/opa/publications/benefits_book/benefits_chap02.asp.*

### The *Nehmer* Litigation

33.     While the material facts that led to the necessity of filing this action concern DFAS's failure after October 2010 to make the retroactive payment of Military Retired Pay pursuant to Section 1414, the history dates back to the United States' involvement in the Vietnam War and subsequent litigation and orders that were entered by the United States District Court for the Northern District of California in *Beverly Nehmer, et al. v. United States Veterans' Administration, et al.*

34.     During the Vietnam War, many veterans were exposed to Agent Orange, a chemical defoliant containing the toxic substance dioxin.  *Nehmer v. US Veterans Admin.*, 32 F. Supp. 2d 1175 (N.D. Cal. 1999) ("*Nehmer II*").  The United States used Agent Orange to clear dense jungle land and, through such use, exposed members of the military to "one of the most highly toxic substances known to the scientific community." *Nehmer v. U.S. Veterans' Admin.*, 712 F. Supp. 1404, 1407 (N.D. Cal. 1989) ("*Nehmer I*").  Human exposure to Agent Orange led to a multitude of diseases, including leukemia, Hodgkin's Disease, Ischemic Heart Disease, Diabetes, Multiple Myeloma, Non-Hodgkin's Lymphoma, Parkinson's Disease, Peripheral Neuropathy, Porphyria

Cutanea Tarda, Prostate Cancer, Respiratory Cancers, and Soft Tissue Sarcomas. *See Veterans' Diseases Associated with Agent Orange*, U.S. Dept. of Veterans Affairs, available at http://www.publichealth.va.gov/exposures/agentorange/conditions/.

35.     After the Vietnam War ended, the VA "routinely denied compensation for veterans who allege[d] that exposure to Agent Orange . . . caused diseases other than chloracne." *Nehmer I* at 1407. "As of October 1, 1983, 9,170 veterans filed claims with disabilities that they allege[d] were caused by Agent Orange; 7,709 were denied compensation because the VA found that the claimed diseases where not service connected." *Id.*

36.     "In response to the controversy over Agent Orange, Congress in 1984 enacted the Veterans' Dioxin and Radiation Exposure Compensation Standards Act ("the Dioxin Act"), Pub.L. 98-542 (HR 1961), 99 Stat. 2725, 98th Cong.2d Sess., *reprinted in part at*, 38 U.S.C. § 1154 note." *Nehmer II* at 1176. The Dioxin Act was intended to ensure that all veterans who were disabled by reason of their service in Vietnam received appropriate disability compensation. *Nehmer I* at 1407. The Dioxin Act authorized "the Administrator of the VA to conduct rulemaking to determine which diseases will be deemed service connected for *all diseases* claimed to be caused by Agent Orange exposure," rather than determining whether each veteran's claimed disease was caused by Agent Orange exposure on an individual basis. *Id.* Despite the Dioxin Act and Congress's stated goal of providing appropriate benefits to all veterans who were disabled as a result of exposure to Agent Orange, the VA's inability and unwillingness to provide veterans with the benefits they were due necessitated extensive litigation brought on behalf of the *Nehmer* class.

37.     On April 22, 1985, the Administrator of the VA ("Administrator"), in a proposed rule, "set forth five factors to govern evaluation of the scientific evidence." *Id.* at 1408. The proposed rule also reiterated that chloracne was the only disease that was service-connected. *Id.* After significant review of background information and scientific studies on the effects of Agent Orange exposure on human populations, the VA published a final regulation identical to the proposed rule, which stated "that 'sound scientific and medical evidence does not establish a cause and effect relationship between dioxin exposure' and any other disease but chloracne." *Id.* By December 1987, "over 31,000 veterans [had] been denied compensation under this regulation."

*Nehmer I* at 1408.

38.     On February 2, 1987, Vietnam veterans and survivors of veterans filed a class action lawsuit in the Northern District of California alleging that the final regulation was invalid because it violated, among other things, provisions of the Dioxin Act and the judicial review provisions of the Administrative Procedure Act.  *Id.*  The District Court certified the plaintiffs' proposed class of current or former service members, or their next of kin, who were eligible to apply for claims before the VA for service-connected disabilities arising from exposure to Agent Orange, or who had had a claim denied by the VA for exposure to Agent Orange.  The District Court agreed with the plaintiffs that without certification, "they could win the battle to change the Dioxin regulation, and lose the war to provide benefits to wrongly denied applicants."  *Nehmer v. U.S. Veterans' Admin*, 118 F.R.D. 113, 120 (N.D. Cal. 1987).

39.     In the substantive case, the plaintiffs alleged that the VA and the Administrator failed to comply with the Dioxin Act by failing to review pertinent scientific studies, wrongfully precluding consideration of animal studies, wrongfully requiring the scientific evidence to demonstrate a "cause and effect" relationship between exposure to Agent Orange and the claimed diseases rather than the less demanding standard that there be a "statistical association" between the two, "failing to give the benefit of the doubt to the veterans when confronted with conflicting evidence of approximately equal weight," and "fail[ing] to produce and transmit accurate committee minutes to the Administrator, so that the administrator's review of the Committee's conclusions was distorted."  *Nehmer I* at 1409.  The District Court stated:

> [T]he Court agrees with plaintiffs that the Administrator's adoption of the cause and effect test and failure to give the benefit of the doubt to veterans violated the Dioxin Act.  The Court further determines that these errors sharply tipped the scales against the claims of veterans. Given the congressional finding of substantial scientific uncertainty regarding the effects of Agent Orange, we hold that these errors are not harmless; they may very well account for the conclusion that the Administrator reached in the Dioxin regulation.

*Nehmer I* at 1409.

### The Agent Orange Act of 1991

40.     The Agent Orange Act of 1991, 38 U.S.C. § 1116, was enacted after the District

Court in *Nehmer* invalidated the VA regulations under the Dioxin Act.  The Agent Orange Act required that the Secretary of the VA conduct new rulemaking proceedings to determine which diseases are sufficiently associated with exposure to Agent Orange so that veterans with diseases determined to be associated receive a presumption of service-connection, thus entitling them to VA Disability Compensation.  *See* 38 U.S.C. § 1116.

### The 1991 Final Stipulation and Order in *Nehmer*

41.     In May of 1991, following the enactment of the Agent Orange Act of 1991, the VA and *Nehmer* class entered into the above-referenced 1991 Order.  *See* Final Stipulation and Order, *Nehmer v. U.S. Dep't of Veterans Affairs*, No. CV 86-6160 (N.D. Cal. May 14, 1991).  The 1991 Order provides, among other things, that as soon as the VA promulgates a regulation designating a particular dioxin-related disease as "service-connected," the VA must (1) identify all veterans and survivors who had previously filed a claim based on the newly recognized disease, (2) readjudicate the claims of these veterans and survivors under the newly promulgated regulation, and (3) in those cases in which the VA awards disability compensation for the newly recognized disease as a result of the readjudication, pay those veterans VA disability compensation retroactive to the date of the previous claim.  The end product of this process is typically described as a "*Nehmer* readjudication decision."  The VA is also required to provide notice to each class member that his or her claim would be readjudicated.  A true and correct copy of the 1991 Order is attached to this Complaint as Exhibit A, and its contents are incorporated herein by reference.

42.     Federal regulations provide that "[i]f a Nehmer class member entitled to retroactive benefits . . . dies prior to receiving payment of any such benefits, VA shall pay such unpaid retroactive benefits to the first individual or entity listed below that is in existence at the time of payment: (i) The class member's spouse. . . (ii) The class member's child(ren). . . (iii) The class member's parent(s) . . . (iv) The class member's estate."  38 C.F.R. § 3.816(f)(i) –(iv).

43.     Since 1991, the VA has issued new determinations designating particular dioxin-related disease as service-connected, including in 1994, 1996, 2001, 2003, 2007, and most recently (as described herein) in 2010.  It was the most recent additions in 2007 and 2010—after CRDP was enacted—that resulted in veteran/retirees becoming entitled, as a result of a *Nehmer* readjudication

decision, to both retroactive payments of VA Disability Compensation (because of a retroactive increase in their combined VA disability rating) and Military Retired Pay (because Section 1414 requires receipt of both benefits).

**The Secretary of Veterans Affairs Adds New Diseases in 2010**

44.     On October 13, 2009, the former Secretary of Veterans Affairs announced his decision under the Agent Orange Act of 1991 to establish new diseases as being presumptively service-related due to Agent Orange exposure.  These new diseases included hairy-cell leukemia and other B-cell leukemias, Parkinson's Disease, and ischemic heart disease.  Then, on August 31, 2010, a final regulation, 38 C.F.R. § 3.309(e), was published in the Federal Register by the VA, expanding the list of disabilities that are presumed to be related to Agent Orange and other herbicide exposures to include the foregoing diseases.  *See* 38 C.F.R. § 3.309(e).

**VA Readjudicates Class Member Cases Starting in October 2010**

**But Unlawfully Withholds VA Disability Compensation**

45.     After the promulgation of 38 C.F.R. § 3.309(e) and pursuant to the 1991 Order in *Nehmer*, the VA identified more than 100,000 *Nehmer* class members who were entitled to a *Nehmer* readjudication because they had previously filed a VA claim based on one or more of the newly recognized diseases.  On or about October 31, 2010, the VA began to readjudicate these previously filed disability claims concerning the three new diseases listed in Section 3.309(e).

46.     Typically, the readjudication resulted in one of two outcomes.  Either (1) the readjudication resulted in a retroactive increase in the veteran's combined VA disability rating, or (2) the readjudication had no effect on the veteran's combined VA disability rating.  If the veteran received a retroactive increase in the combined VA disability rating, then the veteran could potentially receive not only retroactive payments of VA Disability Compensation from the VA (regardless of the magnitude of the increase in the combined disability rating), but also retroactive payments of Military Retired Pay from DFAS (so long as the new combined VA disability rating was at least 50 percent and the veteran had served at least 20 qualifying years).

47.     After a readjudication, the VA would notify (or attempt to notify) by mail the *Nehmer* veterans, or their surviving spouses, children or parents, of their *Nehmer* readjudication

1    decision, as required under the 1991 Order and 38 C.F.R. § 3.816(f).  In many cases the VA failed

2    to locate the veteran or his survivors.  The National Veterans Legal Services Program ("NVLSP"),

3    co-counsel here and in *Nehmer*, later undertook to and succeeded in finding many of those veterans

4    or survivors, resulting in the payment of more than $3 million dollars in VA Disability

5    Compensation.

6         48.    In literally thousands of cases in which the VA mailed a *Nehmer* readjudication

7    decision to a military retiree class member or the survivor of such a retiree, the VA announced in its

8    notice letter to the class member that although the accompanying readjudication decision resulted in

9    a retroactive increase in the combined VA disability rating, the VA was withholding payment of the

10   retroactive VA Disability Compensation that was owed.   In many of these notice letters, the VA

11   expressly stated that it was required *by law* to withhold all of the retroactive VA Disability

12   Compensation that would otherwise be owed to the class member as a result of the accompanying

13   readjudication decision because the class member had received Military Retired Pay.  This

14   statement of law was then, and still is, incorrect and contrary to law because of the provisions of

15   Section 1414.

16        49.    Notably, in many other cases in which the VA made a readjudication decision that

17   increased the combined VA disability rating of a military retiree class member, the notice letter sent

18   to the retiree or survivor of the retiree stated, correctly, the exact opposite; namely, that the law

19   required VA to pay, rather than withhold, the retroactive VA Disability Compensation owed as a

20   result of the *Nehmer* readjudication decision, even though the class member had also received

21   Military Retired Pay.  In these cases, the VA paid pursuant to Section 1414, rather than withheld,

22   the retroactive VA Disability Compensation owed as a result of the *Nehmer* readjudication decision.

23        **VA's Failure to Take Remedial Action to Release the Retroactive VA Disability**

24        **Compensation It Had Wrongfully Withheld From Retirees and Their Survivors**

25        50.    Pursuant to the privacy protection order entered during the *Nehmer* litigation, the

26   VA has been periodically disclosing to NVLSP copies of the more than 100,000 notice letters and

27   *Nehmer* readjudication decisions that VA has been sending to class members beginning in late

28   2010.  Starting in 2013, class members who are military retirees or their survivors began

complaining to NVLSP that (a) VA had announced in the notice letters that it withheld the retroactive VA Disability Compensation owed as a result of the accompanying *Nehmer* readjudication decision and (b) in the years that had elapsed since the announced withholding, the VA had still not released the wrongfully withheld compensation.  Accordingly, NVLSP began in 2013 to file written complaints with counsel for the VA in *Nehmer* about individual military retirees or their survivors whose retroactive VA Disability Compensation had been wrongfully withheld, and VA's failure to take remedial action.  The government's response to these complaints differed depending on whether the class member involved was a living military retiree or a survivor of a deceased military retiree.

51.     With regard to living military retirees, government counsel informed NVLSP in 2014 that continued use by NVLSP of the complaint process to remedy VA withholding of retroactive VA disability compensation was not justified because the government represented that it had, in 2014, "a process in place to ensure that the necessary withholding pay adjustments take place" for living military retirees whose VA disability compensation had been withheld years earlier.  NVLSP responded by asking, given that VA apparently had such a process in place, for VA to disclose to NVLSP the identity of the living military retirees whose cases VA intended to process in the future for a "necessary withholding pay adjustment."  The government responded to this request by retracting its representation, admitting that no such process was in place to ensure that VA would release to living military retirees retroactive VA Disability Compensation the VA had previously withheld.

52.     The government stated it would develop a list of all living military retirees who are potentially entitled to release of the VA Disability Compensation that VA had previously withheld and agreed to a timetable for review of these cases.  In 2015, VA provided NVLSP a list of 3,491 class members and a timetable for reviewing all 3,491 cases.  In the exercise of due diligence, NVLSP tested the VA's representation that the list of 3,491 truly included all living military retirees as to whom VA still owed the Disability Compensation it had withheld years earlier.  NVLSP selected the cases of 197 living retirees who were not on the list of 3,491, but who had their VA Disability Compensation withheld by the VA.  Part way through investigating the cases of these

197 living retirees, NVLSP identified four who had their VA Disability Compensation withheld, and who informed NVLSP that they had never received the withheld compensation from the VA. In response to NVLSP's 2015 complaint about these four living retirees, the VA admitted that these four retirees were owed the aggregate amount of $174,898 (more than $43,000 in tax-free compensation per retiree) that VA had withheld years earlier.  Thereafter, VA admitted that its list of 3,491 was not "sufficient."  In 2016, the VA developed and provided NVLSP with a new list of 7,305 living retirees.  As it did in 2015 with regard to its list of 3,491, the VA represented that the new list of 7,305 included all living military retirees as to whom VA still owed VA Disability Compensation it had previously withheld.  The VA is currently reviewing the cases on the list of 7,305.

53.     In contrast to its response regarding living military retirees, VA did not take the position that it had a process in place to ensure that survivors of deceased military retirees would receive the VA Disability Compensation that VA had wrongfully withheld.  Nor did VA take the position that it had the ability to identify these survivors. VA agreed, however, that if NVLSP reviewed on its own the more than 100,000 notice letters and readjudication decisions that VA had disclosed pursuant to the privacy protection order and isolated class members who (a) are survivors of deceased military retirees, (b) had been the subject of VA withholding, and (c) had their combined VA disability rating retroactively increased in a *Nehmer* readjudication decision from less than 50 percent to 50 percent or more for all or part of the period from January 1, 2004 to the present, VA would review the case to determine whether it was required by law to release all or part of the retroactive VA Disability Compensation it had withheld years earlier.

54.     As a result of this agreement, the VA has thus far released more than $38.1 million to more than 1,500 class members accurately identified by NVLSP as having been the subject of wrongful VA withholding of retroactive VA Disability Compensation (an average of more than $25,000 per class member in tax-free compensation).  These figures do not include hundreds of other survivors of deceased military retiree class members whom NVLSP has identified for VA to review and pay.

//

**DFAS's Failure to Make Retroactive Payments of Military Retired Pay**

**Pursuant to Section 1414**

55.      Like the VA, DFAS has also taken an inconsistent and unlawful approach with respect to retroactive payments of Military Retired Pay.

56.      As described above, federal law prior to 2004 did not permit a veteran/military retiree to receive the full amounts of both VA Disability Compensation and Military Retired Pay. Section 1414 amended this prohibition for military retirees with a combined VA disability rating of 50 percent or more for any period after January 1, 2004. As a result, when the VA began in late 2010 to issue *Nehmer* readjudication decisions to military retiree class members or their survivors that retroactively increased the combined VA disability rating to 50 percent or more for any part of the period on or after January 1, 2004, DFAS was obligated to determine whether the military retiree or survivor was entitled to retroactive Military Retired Pay, and, if so, to make the payment required by law.

57.      However, in many cases, *Nehmer* class veterans who served for at least 20 years (or their survivors, if deceased) and had a combined disability rating of at least 50 percent for any period of time on or after January 1, 2004, never received any communications from DFAS at all; they neither received any payment of retroactive Military Retired Pay, nor heard from DFAS the amount they would be entitled to receive.

## INDIVIDUAL PLAINTIFFS' FACTS

### Doris Davis, Spouse of Calvin Coolidge Davis

58.      Calvin Coolidge Davis was a veteran of the U.S. Army who served on active duty for more than 20 years and was diagnosed with coronary artery disease, which is a type of ischemic heart disease, after serving on active duty in Vietnam during the Vietnam War. Mr. Davis passed away on November 18, 2007, and is survived by his spouse, Plaintiff Doris Davis.

59.      On March 25, 2002, prior to his death, Mr. Davis submitted to the VA a disability claim for coronary artery disease. At the time, his combined VA disability rating was 40 percent. VA denied his claim on November 7, 2002.

60.      Based on information and belief, pursuant to the 1991 Order, the VA readjudicated

Mr. Davis's claim on or about December 14, 2011—a little more than a year after ischemic heart disease was added to the list of diseases which are presumed to be service related based on Agent Orange exposure.  In its *Nehmer* readjudication decision, the VA granted Mr. Davis's disability claim for coronary artery disease and raised his combined VA disability rating to 50 percent, effective retroactive to November 22, 2004.

61.     Because his prior combined disability rating was less than the 50 percent minimum in order to be eligible for CRDP under Section 1414, Mr. Davis previously could not have received the full amount of both his VA Disability Compensation and his Military Retired Pay.  Thus, he waived a portion of his Military Retired Pay in order to receive the full amount of his VA Disability Compensation.  But when the VA increased his combined disability rating to the minimum 50 percent requirement retroactive to November 22, 2004, Mr. Davis became eligible for CRDP and potentially entitled to retroactive payments of Military Retired Pay from DFAS that he previously had to waive in order to receive his tax-free VA Disability Compensation.

62.     Based on information and belief, the VA mailed to Mrs. Davis on March 13, 2012, a letter about her husband's *Nehmer* readjudication decision, attaching a copy of the decision.  While acknowledging that Mr. Davis's combined VA disability rating had increased to 50 percent—thus entitling him to not only an increase in VA Disability Compensation, but also making him eligible for retroactive payments of Military Retired Pay under Section 1414—the VA's letter stated "You are not entitled to any retroactive benefits for Calvin Coolidge Davis's claim for service connected compensation based on this decision.  Any retroactive benefits that would otherwise be payable have been withheld based on your receipt of [military] retired pay."

63.     NVLSP complained to the VA in early 2016 about the VA's wrongful withholding of VA Disability Compensation in March 2012.  Based on information and belief, on or about March 22, 2016—four years after its March 2012 correspondence in which it notified Mrs. Davis it had withheld VA Disability Compensation— the VA sent Mrs. Davis another letter.  In that letter, VA stated that "Funds were initially withheld for military retired pay pending receipt of information from Defense Finance and Accounting Services (DFAS).  Please note that based on receipt of that information a portion of previously withheld funds are being released."  The VA accordingly

1    compensated Mrs. Davis with $7,145.00 in retroactive VA Disability Compensation.

2    64.    However, while the VA represented in its March 2016 letter that it had previously

3    been in contact with DFAS about Military Retired Pay, DFAS never contacted Mrs. Davis about

4    whether she was also entitled to retroactive payment of Military Retired Pay.  Thus, instead of

5    DFAS "automatically" making payments for CRDP, it did nothing in that regard, and Mrs. Davis

6    has yet to receive any retroactive payments of Military Retired Pay based on her deceased

7    husband's increase in his combined VA disability rating, or any notice that there has been a

8    determination regarding the amount of those benefits.  Based on information and belief, Mrs. Davis

9    is entitled to payment by DFAS of retroactive Military Retired Pay.

**Marion Y. Grant, Daughter of Junior Grant**

11    65.    Junior Grant was a veteran of the U.S. Army who served on active duty for more

12    than 20 years and was diagnosed with ischemic heart disease after serving in Vietnam during the

13    Vietnam War.  Mr. Grant passed away in 2008, and is survived by his daughter, Plaintiff Marion Y.

14    Grant.

15    66.    Prior to his death, Mr. Grant submitted to the VA multiple claims for heart disease.

16    VA denied his claims in 1989, 2006, and 2008.  Mr. Grant's combined VA disability rating was 0

17    percent for the period prior to August 24, 2006, 30 percent for the period from August 24, 2006 to

18    March 11, 2008, and 50 percent for the two-month period from March 11, 2008 to the date of his

19    death.

20    67.    Based on information and belief, pursuant to the 1991 Order, the VA readjudicated

21    Mr. Grant's claim on or about January 23, 2012.  In its *Nehmer* readjudication decision, the VA

22    granted Mr. Grant's disability claim for ischemic heart disease and raised his combined VA

23    disability rating to 100 percent effective from August 11, 2003 to the date of his death in 2008.

24    68.    Prior to his *Nehmer* readjudication decision, Mr. Grant's combined VA disability

25    rating was less than the 50 percent minimum required in order to be eligible for CRDP under

26    Section 1414.  He thus waived a portion of his Military Retired Pay in order to receive the full

27    amount of his tax-free VA Disability Compensation.  But when the VA increased his combined

28    disability rating to 100 percent retroactive to August 11, 2003, Mr. Grant became eligible for CRDP

and potentially entitled to retroactive payments of Military Retired Pay from DFAS that he previously had to waive in order to receive the full amount of his tax-free VA Disability Compensation.

69.     Based on information and belief, the VA mailed to Ms. Grant on June 21, 2012, a letter about the VA's *Nehmer* readjudication decision for her father's condition, attaching a copy of that decision.  While acknowledging that Mr. Grant's combined VA disability rating increased to 100 percent—thus entitling him to not only an increase in VA Disability Compensation, but also making him eligible for retroactive payments of Military Retired Pay under Section 1414—the VA's letter stated "The veteran is not allowed to receive full military retired pay and full VA compensation at the same time. . . [W]e must withhold part of the veteran's compensation effective September 1, 2003 until his death to prevent a double payment.  By working together with the military service department, we will make sure you get your full combined payment."

70.     NVLSP complained to the VA in early 2015 about the VA's wrongful withholding of VA Disability Compensation that took place in this case in June 2012.  Based on information and belief, in 2015, the VA sent Mrs. Davis another letter, which was undated.  In that letter, the VA stated that "Funds were initially withheld for military retired pay pending receipt of information from Defense Finance and Accounting Services (DFAS).  Please note that based on receipt of that information a portion of previously withheld funds are being released."  The VA accordingly compensated Mrs. Grant with $21,563.00 in retroactive VA Disability Compensation.

71.     However, while the VA represented in its 2015 letter that it had been in contact with DFAS about Military Retired Pay, DFAS never contacted Ms. Grant about whether she was entitled to retroactive payment of Military Retired Pay.  Thus, instead of DFAS "automatically" making payments for CRDP, it did nothing in that regard, and Ms. Grant has yet to receive any retroactive payments of Military Retired Pay based on her father's increase in his combined VA disability rating, or any notice that there has been a determination regarding the amount of those benefits.  Based on information and belief, Ms. Grant is entitled to payment by DFAS of retroactive Military Retired Pay.

//

**CLASS ALLEGATIONS**

72.     This action for injunctive and monetary relief is brought by the named Plaintiffs as a class action, on their own behalf and on behalf of all others similarly situated, under the provisions of Rule 23(a), Rule 23(b)(3), and Rule 23(b)(2) of the Federal Rules of Civil Procedure.

73.     The Veterans Class so represented by Plaintiffs in this action, and of which Plaintiffs are themselves members, consists of a nationwide class of:

i.      All living members of the *Nehmer* class who served for at least 20 years or more of creditable service in active or reserve duty, or, if any such member is deceased, his surviving spouse, children, or parents;

ii.     Who received a retroactive increase in their combined VA disability rating to at least 50 percent for any period of time on or after January 1, 2004, as a result of the VA *Nehmer* readjudication on or after October 2010 that awarded them VA Disability Compensation based, at least in part, on a previous claim for either hairy-cell leukemia and other B-cell leukemias, Parkinson's Disease, or ischemic heart disease; and

iii.    As to whom no determination has been made by Defendants as to the class member's entitlement to retroactive payment of Military Retired Pay.

74.     The Veterans Payment Subclass so represented by Plaintiffs in this action, and of which Plaintiffs are themselves members, consists of a nationwide class of:

i.      All living members of the *Nehmer* class who served for at least 20 years or more of creditable service in active or reserve duty, or, if any such member is deceased, his surviving spouse, children, or parents;

ii.     Who received a retroactive increase in their combined VA disability rating to at least 50 percent for any period of time on or after January 1, 2004, as a result of the VA *Nehmer* readjudication on or after October 2010 that awarded them VA Disability Compensation based, at least in part, on a previous claim for either hairy-cell leukemia and other B-cell leukemias, Parkinson's Disease, or ischemic heart disease; and

iii.     Who have not received payment of retroactive Military Retired Pay in an amount that is $10,000 or less.

75.     The exact number of Veterans Class and Veterans Payment Subclass members is not presently known to Plaintiffs and can only be ascertained through discovery.  Discovery is also necessary to ascertain which Veterans Class members are entitled to payment of $10,000 or less in retroactive Military Retired Pay, and which Veterans Class members are entitled to payment of more than $10,000.  The Veterans Class and Veterans Payment Subclass are so numerous that joinder of individual members in this action is impracticable.

76.     There are common questions of law and fact in the action that relate to and affect the rights of each member of the Veterans Class and Veterans Payment Subclass which predominate over any questions solely affecting individual members of each such class and subclass, and the relief sought by the Veterans Class and Veterans Payment Subclass is common for each such class and subclass. The questions of law and fact common to the Veterans Class and Veterans Payment Subclass include whether Defendants failed to properly implement 10 U.S.C. § 1414 and whether Defendants have unreasonably delayed or otherwise acted unlawfully with respect to the Plaintiffs and the class and subclass members by not making any determination as to whether the Plaintiffs and the Veterans Class are eligible to receive any retroactive payment of Military Retired Pay, and by not making retroactive payments of Military Retired Pay to Plaintiffs and the Veterans Payment Subclass.

77.     The claims of Plaintiffs, who are representatives of both the Veterans Class and Veterans Payment Subclass in this action, are typical of the claims of the class and subclass, in that the claims of all members of the class and subclass, including Plaintiffs, depend on a showing of the acts and omissions of DFAS giving rise to the right of Plaintiffs to the relief sought.  There is no conflict as between any individual named Plaintiff and other members of the class and subclass with respect to this action, or with respect to the claims for relief set forth herein.

78.     The named Plaintiffs are the representative parties for the Veterans Class and Veterans Payment Subclass, and are able to, and will, fairly and adequately protect the interests of the class and subclass.  The attorneys for Plaintiffs are experienced and capable in litigation.

Indeed, NVLSP and Sidley Austin LLP, counsel in this action, represented the certified class in *Nehmer*. The attorneys designated as counsel for Plaintiffs will actively conduct and be responsible for Plaintiffs' case.

79.     This action is properly maintained as a class action as the questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Further, this action is properly maintained as a class action as DFAS has acted or refused to act, as specifically alleged herein, on grounds which are applicable to the class, and have by reason of such conduct, made appropriate final injunctive relief or corresponding declaratory relief with respect to the entire class, as sought in this action.

## COUNT I

### (Injunctive Relief for the Veterans Class Pursuant to the Administrative Procedures Act; 5 U.S.C. § 701-706)

80.     Plaintiffs re-allege and incorporate by reference the facts contained in ¶¶ 1 through 79 above as if fully set forth herein.

81.     This cause of action for injunctive relief is to compel Defendants to determine the amount of retroactive Military Retired Pay that Plaintiffs and each member of the Veterans Class are entitled to receive under 10 U.S.C. § 1414. *See* 5 U.S.C. § 706.

82.     Section 1414 confers on eligible veterans, such as Plaintiffs and the Veterans Class, a substantive right to monetary benefits from the United States by prohibiting the United States from, under certain circumstances, withholding Military Retired Pay from a veteran who is also in receipt of VA Disability Compensation.

83.     Defendants' unreasonable delay and failure to determine the amounts of retroactive Military Retired Pay due to Plaintiffs and the Veterans Class as a result of their *Nehmer* readjudication decisions on or after October 2010 constitutes "agency action," which is defined in part as "the whole or part of an agency['s] . . . failure to act" under 5 U.S.C. § 551(13).

84.     A plaintiff "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review

thereof," except to the extent that "(1) the statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701-02.

85.    No statute precludes judicial review of Defendants' failure to determine the amounts of retroactive Military Retired Pay due to Plaintiffs.  Nor is Defendants' compliance with Section 1414 an agency action committed to Defendants' discretion by law.  Rather, Defendants' obligation to restore Military Retired Pay to eligible veterans under Section 1414 is mandatory, and even DFAS acknowledges that such determinations must "automatically" be made.

86.    Plaintiffs and the Veterans Class members have been unlawfully deprived of a determination of the amounts of retroactive payments of Military Retired Pay to which they are entitled under 10 U.S.C. § 1414 as a result of an increase in their combined VA disability rating from their *Nehmer* readjudication decision (including whether the amount due each Plaintiff and each member of the Veterans Class is $10,000 or less, or is more than $10,000).  Under 5 U.S.C. § 706, a "reviewing court shall--(1) compel agency action unlawfully withheld or unreasonably delayed."

87.    The VA began readjudicating *Nehmer* claims nearly six years ago, starting in October 2010, but Defendants have taken no action to inform Plaintiffs and the Veterans Class of the amounts they are owed.  Plaintiffs thus request that Defendants be ordered to make a determination of the amounts Plaintiffs and members of the Veterans Class are entitled to receive as retroactive compensation of Military Retired Pay under the CRDP program.

## COUNT II

**(Monetary Relief for the Veterans Payment Subclass**

**Pursuant to the Tucker Act, 28 U.S.C. § 1346; 10 U.S.C. § 1414 & 38 U.S.C. § 5304)**

88.    Plaintiffs re-allege and incorporate by reference the facts contained in ¶¶ 1 through 79 above as if fully set forth herein.

89.    10 U.S.C. § 1414 confers on eligible veterans, such as Plaintiffs and the Veterans Payment Subclass, a substantive right to monetary benefits against the United States by prohibiting the United States from withholding all or part of a veteran's Military Retired Pay due to receipt of VA Disability Compensation.

90.     Based on information and belief, Plaintiffs and the Veterans Payment Subclass are entitled to retroactive compensation of Military Retired Pay, each in the amount of $10,000 or less. Plaintiffs and the proposed Veterans Payment Subclass members have been unlawfully deprived of the retroactive payments of Military Retired Pay due them under 10 U.S.C. § 1414 as a result of an increase in their combined VA disability rating awarded in their *Nehmer* readjudication decision.

91.     As a direct result of Defendants' failure to act in accordance with existing federal laws, Plaintiffs and the proposed Veterans Payment Subclass members have been, and continue to be, deprived of the Military Retired Pay they are entitled to under 10 U.S.C. § 1414.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs request, for themselves and all others similarly situated, that this Court:

1.     Certify this action as a class action on behalf of the proposed Veterans Class;

2.     Order Defendants to investigate and identify each former *Nehmer* class member who satisfies the definition of the putative Veterans Class set forth above, and compel Defendants to determine, by a date certain, the amount of money each Plaintiff and each member of the Veterans Class is entitled to receive in retroactive Military Retired Pay pursuant to Section 1414;

3.     Certify this action as a class action on behalf of the proposed Veterans Payment Subclass;

4.     Order Defendants to investigate and identify each former *Nehmer* class member who satisfies the definition of the putative Veterans Payment Subclass set forth above, and order Defendants to make payments, by a date certain, of the full amount of Military Retired Pay to which the Plaintiffs and the proposed Veterans Payment Subclass are entitled pursuant to Section 1414; and

5.     Award Plaintiffs their attorney's fees and costs, and any such other relief the Court deems appropriate.

//
//
//

1

**DEMAND FOR JURY TRIAL**

2

Plaintiffs hereby demand a trial by jury.

3

4

Dated:  October 28, 2016

5

SIDLEY AUSTIN LLP

6

7

By:   /s/ *Ronald C. Cohen**
          Howard J. Rubinroit

8

          Bradley H. Ellis
          Ronald C. Cohen

9

          Bradley J. Dugan
          Logan P. Brown

10

*Attorneys for Plaintiffs*
DORIS DAVIS and MARION GRANT

11

12

NATIONAL VETERAN'S LEGAL SERVICES

13

PROGRAM

14

15

By:   /s/ *Barton F. Stichman*
          Barton F. Stichman (*Pro hac vice* application

16

          forthcoming)

17

*Attorneys for Plaintiffs*
DORIS DAVIS and MARION GRANT

18

19

*Pursuant to Local Rule 5-1(i), the filer attests that concurrence in the filing of this

20

document has been obtained from the signatories above.

21

22

23

24

25

26

27

28